UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

---------------------------------------------------------X
In re:                                          :     CHAPTER 11
                                                :
                                                :
LATEX FOAM INTERNATIONAL, LLC.;  :     CASE NO. 14-50845
PURELATEX BLISS LLC.;                    :     CASE NO. 14-50846
LATEX FOAM INTERNATIONAL         :     CASE NO. 14-50847
    HOLDINGS, INC.;                          :
PLB HOLDINGS, LLC                         :     CASE NO. 14-50848
 LATEX FOAM ASSETS                      :     CASE NO. 14-50849
    ACQUISITION, LLC                       :
                                                :     Jointly Administered under
              Debtors                         :     Case No. 14-50845
---------------------------------------------------------X
LATEX FOAM INTERNATIONAL, LLC.;  :
PURELATEX BLISS LLC.;                    :
LATEX FOAM INTERNATIONAL         :
    HOLDINGS, INC.;                          :
PLB HOLDINGS, LLC                         :
 LATEX FOAM ASSETS                      :
    ACQUISITION, LLC                       :
                                                :
              Movants                        :
     VS                                         :
                                                :
WELLS FARGO,                              :
                                                :
              Respondent                  :
---------------------------------------------------------X

**INTERIM STIPULATION AND ORDER (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, AND (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

AND NOW, upon consideration of the Motion of Debtors for an Order Pursuant to Fed. R. Bankr. P. 4001(b) and 11 U.S.C. § 363(c)(2)(B) Authorizing Debtors to Use Cash Collateral and

Provide Adequate Protection (the "Motion")[1], and after notice of the Motion together with notice of the interim hearing thereon having been given and served by Latex Foam International, LLC ("Latex"), Latex Foam International Holdings, Inc. ("Holdings"), Latex Foam Assets Acquisition, LLC ("LFA"), PLB Holdings, LLC ("PLB"), PureLatex Bliss, LLC ("Bliss", and together with Holdings, LFA, and PLB are referred to collectively herein as the "Guarantors"; the Guarantors and Latex are collectively referred to herein as the "Debtors"), to the (1) United States Trustee, (2) the Debtors' secured creditors, and (3) any committee appointed under 11 U.S.C. § 1102 if one has been appointed, and if not, to the twenty (20) largest unsecured creditors on the lists filed by the Debtors pursuant to Fed. R. Bankr. P. 1007(d), and after the interim hearing on the Motion, on this 4th day of June 2014, this Interim Stipulation and Order Authorizing Debtors to Use Cash Collateral Pursuant to Fed. R. Bankr. P. 4001(b) and 11 U.S.C. § 363(c)(2)(B) on a Limited Basis and Provide Adequate Protection (this "Stipulation") is entered into by and between the Debtors and Wells Fargo Bank, a national banking association (the "Bank") and Ordered by the Court.

A. **Debtors & Bankruptcy Cases**.

1. The Debtors each filed a voluntary petition under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on May 30, 2014 (the "Petition Date") in the United States Bankruptcy Court for the District of Connecticut (the "Court").

2. Since the Petition Date, each of the Debtors has remained in possession of its assets and is operating its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

---

1 Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

2

3. Notice of the Motion and Order shortening time pursuant Fed. R. Bankr. P. 9006(c) for the interim hearing on the Debtors' use of cash collateral has been served in accordance with § 102(1) of the Bankruptcy Code and Fed. R. Bankr. P. 4001(d). Such notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable rules of procedure in respect to the relief requested.

### B. Pre-Petition Agreements and Collateral.

4. The Bank provided financing to Latex in the original principal amount of $34,000,000 pursuant to the Loan Agreement (as defined below) entered into by the Bank, Latex and Latex International West Coast, Inc. ("LIW"). LIW was dissolved on December 30, 2011. The loans advanced under the Loan Agreement are secured by substantially all assets of the Debtors.

5. The Guarantors guaranteed all of Latex's obligations arising under the Loan Agreement.

6. The Bank, Latex and LIW (together, the "Original Borrowers"), are parties to that certain Amended and Restated Loan and Security Agreement dated April 17, 2006 (the "Original Loan Agreement"), as amended by those certain Master Reaffirmation and Amendments No. 1 through Master Reaffirmation and Amendments No. 14 (together with all exhibits, schedules, annexes, and as further amended and restated, collectively, the "Pre-Petition Loan Agreement").

7. In conjunction with the Loan Agreement, the Guarantors, as applicable, executed the following guarantees whereby each guaranteed the obligations of the Original Borrowers under the Loan Agreement: (i) that certain Amended and Restated Continuing Guaranty Agreement dated April 17, 2006 by Holdings in favor of the Bank; (ii) that certain Continuing Guaranty Agreement dated September 28, 2008 by and between LFA and the Bank; (iii) that certain Continuing Guaranty Agreement dated May 7, 2010 by and between PLB and the Bank;

3

and (iv) that certain Continuing Guaranty Agreement dated May 7, 2010 by and between Bliss and the Bank (collectively, as each has been amended or reaffirmed from time to time, the "Guarantees").

8. As additional security for the obligations under the Loan Agreement and the Guarantees, the Debtors, as applicable, executed the following: (i) that certain Security Agreement dated September 28, 2008 by and between LFA and the Bank; (ii) that certain Security Agreement dated May 7, 2010 by and between Bliss and the Bank; (iii) that certain Security Agreement dated May 7, 2010 by and between PLB and the Bank; (iv) that certain Security Agreement dated February 28, 2011 by and between Holdings and the Bank; and (v) that certain Second Amended and Restated Stock and Membership Interest Pledge Agreement dated May 7, 2010 by and between Holdings and the Bank (collectively, the "Security Agreements").

9. In addition to the Pre-Petition Loan Agreement, the Bank and Latex entered into that certain WellsOne® Commercial Card Program, dated on or about October 15, 2011 (the "WellsOne Card Program").

10. The Bank asserts that the Loan Documents grant the Bank a first priority lien on all assets of the Debtor (the "Pre-Petition Collateral"). The Bank asserts that it perfected its lien by filing UCC-1 Financing Statements in the state of formation of each respective Debtor. The Loan Agreement, the WellsOne Card Program, Guarantees, Security Agreements and the other documents executed in connection therewith, as each may have been amended or modified from time to time through the date hereof, are collectively referred to herein as the "Pre-Petition Loan Documents".

## C. Acknowledgments and Representations.

11. Subject to the Review Period (defined below), each Debtor hereby acknowledges, represents, warrants, and agrees that:

    a. all of the provisions contained in Sections A and B hereto are true and correct in all respects and are expressly incorporated herein by reference;

    b. the Pre-Petition Loan Documents are legal, valid, and binding obligations of the Debtors and are enforceable against the Debtors in accordance with their respective terms, except to the extent contrary to federal/state bankruptcy or insolvency laws;

    c. the principal amount outstanding by the Debtors under the Loan Documents as of the Petition Date, is as follows: (i) Revolver Loan: $6,280,838.10; (ii) Term Loan: $1,820,000.00; (iii) 2011 Term Loan $2,750,000.00; (iv) Capex Term Loans: (a) Obligation #75: $322,827.16; (b) Obligation #109: $452,380.90; (c) Obligation #83: $2,583,333.51; and (d) Obligation #91: $713,432.35; and (v) the WellsOne Card Program: $21,174.57. Such amounts do not include interest, fees, costs, and expenses, including, without limitation, attorneys' fees and costs, and other sums recoverable by the Bank under the Pre-Petition Loan Documents;

    d. the Bank has duly perfected, valid, non-avoidable, first priority liens on and security interests in the Pre-Petition Collateral (collectively, the "Pre-Petition Liens") to secure the obligations of the Debtors under the Pre-Petition Loan Documents (collectively, the "Pre-Petition Obligations"); and

    e. the Pre-Petition Obligations, Pre-Petition Liens, and Pre-Petition Loan Documents are not subject to any counterclaim, right of offset, claim, or other defense of the Debtors of any kind.

12. Each Debtor hereby waives any right it may have as of the date of this Stipulation to contest, setoff against, counterclaim, or seek other defense to or reduction of the Pre-Petition Obligations, Pre-Petition Liens, and/or Pre-Petition Loan Documents.

13. The acknowledgments, representations, warranties, agreements, and findings made above shall be binding on each Debtor provided, however, that each Debtor has until the entry of a final order approving this Stipulation (the "Review Period") to investigate and challenge the Pre-Petition Obligations, Pre-Petition Liens, and Pre-Petition Loan Documents and bring any appropriate proceeding or thereafter be bound by the acknowledgments, representations, warranties, agreements, and findings made above.

D. **Cash Collateral and Other Agreements.**

14. For purposes of this Stipulation, "Cash Collateral" shall have the meaning ascribed to it pursuant to § 363(a) of the Bankruptcy Code and shall include products, rents, profits, and proceeds (as described in § 9-306 of the Uniform Commercial Code) of and from all Pre-Petition Collateral.

15. The Debtors require the use of Cash Collateral for the purpose of funding its operations during a limited period of time during the pendency of these bankruptcy cases, and the Debtors have requested that the Bank consent to the Debtors' use of Cash Collateral pursuant to the terms and subject to the conditions set forth herein.

16. The Debtors' limited and temporary use of Cash Collateral may result in a reduction in the value of the Pre-Petition Liens without a corresponding reduction in the Pre-Petition Obligations owed to the Bank by the Debtors under the Pre-Petition Loan Documents.

17. Based on the various acknowledgments, representations, warranties, findings, waivers, releases, and covenants contained herein, the Bank is willing to consent to the Debtors' use of Cash Collateral commencing on the date that this Stipulation is approved by the Court for

6

the limited purposes and for the term set forth herein and otherwise in accordance with the terms and subject to the conditions contained herein.

18.  The budget attached hereto as "Exhibit A" (the "<u>Budget</u>") was prepared by the Debtors and enumerates in detail the Debtors' projected cash expenses of operations (collectively, the "<u>Approved Expenses</u>"), from the Petition Date through the Termination Date (as defined hereinafter).

19.  Subject to the terms and conditions set forth herein (and contingent on the Debtors' compliance herewith), and on the condition precedent that this Stipulation is approved by the Court, the Bank hereby consents to the Debtors' use of Cash Collateral to pay only the Approved Expenses set forth in the Budget so long as the Debtors have sufficient cash to make such payments, from the date this Stipulation is approved and entered as an order by the Court until the "<u>Termination Date</u>" which shall be the earlier of (a) 5:00 p.m. (ET) on June 30, 2014; or (b) the date upon which an Event of Default (as defined hereinafter) occurs, except as otherwise agreed to by the Debtors and the Bank.

20.  Except as otherwise agreed to by the Debtors and the Bank, on a weekly basis the Debtors shall not exceed five percent (5%) of the aggregate Approved Expenses, compared to the amounts projected in the Budget.

21.  Nothing contained in this Stipulation shall be deemed to require the Bank to advance uncollected funds or otherwise make loans, advances, and/or extensions of credit to the Debtors.

22.  The Debtors' right to continue to use Cash Collateral shall be contingent on the Debtors' compliance with each and every provision of this Stipulation.

### E. Adequate Protection

23. As adequate protection for any diminution in the value of the Pre-Petition Liens in favor of the Bank securing the Pre-Petition Obligations caused by the Debtors' use of the Bank's Cash Collateral, and to the extent that the Debtors' uses the Bank's Cash Collateral and such use diminishes the value of the Pre-Petition Liens:

24. Pursuant to § 361(2) of the Bankruptcy Code, and subject only to any purchase money security interests that may have priority over the Bank's Pre-Petition Liens as of the Petition Date, the Bank is granted, and the Debtors hereby grant to the Bank, first priority, valid, and perfected replacement liens on and security interests in all of the Debtors' now existing and hereafter acquired real and personal property and assets, including, without limitation, equipment, motor vehicles, accounts, accounts receivable, deposit accounts, equipment, goods, inventory, contracts, contract rights, claims, chattel paper, notes, instruments, tax refunds, insurance proceeds, files, records, securities, general intangibles, investment property, deposits, cash, all actions against any person or entity that is or becomes obligated to the Debtors (whether such action is commenced in this Court or any other court), and all cash and non-cash proceeds thereof (collectively, the "Post-Petition Collateral"), which first priority, valid, and perfected replacement liens and security interests shall be deemed to be effective nunc pro tunc from the Petition Date without further action by the Bank, subject to a carve-out for a) fees payable pursuant to 28 U.S.C. 1930 and b) employee wages of the Debtors accrued but unpaid post-petition and prior to an Event of Default hereunder; provided, however, that such replacement liens and security interests shall not attach to any claims or causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, or 549 or the proceeds thereof, excluding recoveries under 11 U.S.C. § 549 on account of Post-Petition Collateral.

25. Any diminution in the value of the Pre-Petition Liens in favor of the Bank securing the Pre-Prepetition Obligations caused by the Debtors' use of the Bank's Cash Collateral that is not compensated by Post-Petition Collateral shall constitute a cost and expense of administration in the bankruptcy case in accordance with § 503(b)(1) of the Bankruptcy Code and shall have a superpriority status pursuant to § 507(b) of the Bankruptcy Code and, thus, shall be paid ahead of all other costs and expenses of administration of the bankruptcy case, including, without limitation, those specified in §§ 503(b) or 507(a) of the Bankruptcy Code. The post-petition replacement liens and security interests granted to the Bank pursuant to this Stipulation are automatically perfected by operation of law upon the Court's approval of this Stipulation nunc pro tunc from the Petition Date without further action by the Bank. The Bank may, but shall not be required to, file any Uniform Commercial Code financing statements and record any additional documents in any jurisdiction or take any other or further action to validate or perfect the security interests and liens granted to it pursuant to and in accordance with this Stipulation. If the Bank deems it necessary or convenient, the Debtors shall execute and deliver to the Bank, or shall have executed and delivered to the Bank, all in form and substance reasonably satisfactory to the Bank, any other agreements, instruments, documents, or writings to evidence the terms of this Stipulation, the use of Cash Collateral, and/or the Bank's liens and security interests, and the Bank may request from time to time the execution and delivery of Uniform Commercial Code financing statements, continuation statements, amendments to financing statements, and any other agreements, instruments, and/or documents relating to the use of Cash Collateral and/or the security interests and liens granted hereunder. Each Debtor hereby authorizes the execution and filing of all financing statements, amendments, continuations, and other agreements, instruments, and documents desired by the Bank or the perfection of the

security interests and liens granted hereunder, and each Debtor agrees to a lifting of the automatic stay for the limited purpose of carrying out the purposes of this Section. Furthermore, each Debtor irrevocably authorizes the filing of a carbon, photographic or other reproduction of this Stipulation as a financing statement and agrees that such filing is sufficient as a financing statement subject to applicable state law.

26. All of the liens on and security interests in the Post-Petition Collateral granted hereunder are hereby deemed to be effective on and after the Petition Date, shall continue in full force and effect, and shall survive the termination of this Stipulation.

## F. Additional Adequate Protection and Reporting

27. As additional adequate protection for the Debtors' use of Cash Collateral and as a further condition to the Bank's entry into this Stipulation:

a. The Debtors shall pay to the Bank as and when due and payable (collectively, the "Adequate Protection Payments"): (i) commencing on the first business day following the date of this Stipulation and continuing on the first business day of each month thereafter, an amount equal to the accrued and unpaid interest on the outstanding principal balances of the Pre-Petition Obligations at the applicable non-default rates of interest set forth in the Pre-Petition Loan Documents; (ii) the reasonable costs and expenses of the Bank incurred in connection with the bankruptcy cases, the Pre-Petition Obligations, the preservation of the Bank's Pre-Petition Collateral and/or Post-Petition Collateral, the preparation and approval of this Stipulation, the preservation and protection of the Bank's rights hereunder, and the collection of the Indebtedness (as defined hereinafter); provided, however, such amounts shall accrue and shall not be due and payable until all other Obligations are paid by the Debtors; and (iii) to the extent that the Debtors fail to maintain insurance on the Pre-Petition Collateral and/or Post-Petition Collateral, all insurance premiums and other payments reasonably incurred by the

Bank to adequately insure its interests in the Pre-Petition Collateral and/or Post-Petition Collateral shall be due and payable on demand by the Bank (collectively, the "Post-Petition Costs and Expenses").

    b.  The Debtors shall continue to provide such annual, quarterly, monthly, weekly, and/or other reporting as it is obligated to provide the Bank pursuant to the Pre-Petition Loan Documents. In addition, on Tuesday, June 10, 2014 and on each successive Tuesday thereafter, the Debtors shall provide the Bank and the Office of the United States Trustee with (i) a certified report listing the value of all of the Debtors' (A) Eligible Accounts and Eligible Inventory (as such terms are defined in the Pre-Petition Loan Documents) as of Friday of the immediately preceding week and (B) cash and total outstanding accounts receivable as of Friday of the immediately preceding week, an aging thereof, and a record of collections from the immediately preceding, (C) all of the Debtors' outstanding accounts payable, an aging thereof, and a record of payments from the immediately preceding week, and (D) total inventory as of Friday of the immediately preceding week; and (ii) a cash flow statement showing actual cash receipts and disbursements from operations on a weekly basis and comparing actual results compared to the line items in the Budget for all prior periods, and (iii) a compliance certificate certifying (X) comparing the actual results to the aggregate Approved Expenses, together with a certification indicating whether the actual cash expenses paid by the Debtors during the prior week was greater than five (5%) of the aggregate Approved Expenses; and (Y) indicating whether the aggregate value of the cash, the Eligible Accounts Receivable, and the Eligible Inventory as of Friday of the immediately preceding week was equal to or greater than $6,363,000. In addition, the Debtors shall provide the Bank, the United States Trustee, and any Committee, if appointed, with the Debtors' monthly United States Trustee operating reports.

c. Upon reasonable prior notice, the Debtors shall provide the Bank, its representatives, and/or its consultants with reasonable and free access to all financial books, records, and files (whether such information is stored on any computer or disk) during normal business hours to, among other things, verify cash receipts, collateral levels, and results of operations, and the Bank shall be entitled to share such information with its representatives and consultants.

d. For the purpose of this Stipulation, "Indebtedness" shall mean all of the Debtors' obligations to the Bank arising under this Stipulation and the Pre-Petition Loan Documents, including, without limitation, the Pre-Petition Obligations, the Cash Collateral used by the Debtors, and the Post-Petition Costs and Expenses.

## G. Events of Default and Termination.

28. The occurrence of any of the following shall constitute an event of default hereunder (an "Event of Default"):

a. Any Debtor shall fail to keep, observe, or perform any of its agreements or undertakings hereunder, including, without limitation, the Debtors' violation of paragraph 20 or failing to provide any reporting required pursuant to paragraph 29(b);

b. If at any time the aggregate value of the cash, the Eligible Accounts Receivable, and the Eligible Inventory is less than $6,363,000;

c. Any Debtor shall knowingly furnish or knowingly make any false, inaccurate, or incomplete representation, warranty, certificate, report, or summary in connection with or under this Stipulation;

d. Any Debtor or other person shall contest any Pre-Petition Obligation, Pre-Petition Loan Document, or Pre-Petition Lien or other lien or security interest of the Bank, file any claim, complaint, adversary proceeding, suit, demand, action, or cause of action against the

12

Bank with this Court, or seek to have the Court annul, modify, or amend any part of this Stipulation without the prior written consent of the Bank;

      e.    Any Debtor shall suffer the appointment of a trustee or examiner;

      f.    Any Debtors' chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, or any Debtor files a motion to convert its chapter 11 case to a case under chapter 7 of the Bankruptcy Code;

      g.    Any Debtor shall contract or agree to sell any of its real or personal property or assets, outside of the ordinary course of business, which are subject to the Bank's liens and/or security interests, without the prior written consent of the Bank;

      h.    The seizure or forfeiture of any material portion of the Pre-Petition Collateral and/or Post-Petition Collateral by any governmental authority;

      i.    Any Debtor shall pledge or file a motion to pledge any of its real or personal property or assets to any entity other than the Bank, whether pursuant to § 364 of the Bankruptcy Code or otherwise, or allow, voluntarily or involuntarily, any liens or security interests to attach to a material portion of its assets other than liens and security interests existing as of or by reason of this Stipulation; or

      j.    The entry of an order granting relief from the automatic stay with respect to any property or asset of the Debtor with a value greater than $50,000.

      29.    Upon the Termination Date (as a result of the occurrence of an Event of Default or otherwise), this Stipulation shall automatically and immediately terminate, and unless otherwise ordered by the Court, the Debtors' right to use Cash Collateral shall automatically and immediately terminate. Upon the Termination Date, the Bank may seek expedited relief from any stay under § 362 or § 105 of the Bankruptcy Code or other restriction in the enforcement of

its liens and security interests under the Pre-Petition Loan Documents and/or this Stipulation. The Bank and Debtors agree that the Bank may seek an expedited hearing before the Court to consider the entry of such order upon three (3) business days after certification by the Bank of an Event of Default to the Debtors, the United States Trustee, any Committee or the Debtors' 20 largest unsecured creditors, any creditors who assert an interest in Cash Collateral, any taxing authorities to which the Debtors is indebted, and any parties requesting notice under Fed. R. Bankr. P. 2002, and the Debtors reserve and preserve all rights to object to any request of the Bank for relief from any stay under § 362 or § 105 of the Bankruptcy Code or otherwise.

### H. Miscellaneous.

30. The Debtors' representations, warranties, acknowledgments, waivers, and releases set forth in this Stipulation shall survive the termination hereof.

31. The rights, powers, and remedies of the Bank provided in this Stipulation and the Pre-Petition Loan Documents are cumulative and not exclusive of any right, power, or remedy provided by law or equity. No failure or delay on the part of the Bank in the exercise of any right, power, or remedy shall constitute a waiver of such right, power, or remedy.

32. This Stipulation constitutes the sole agreement of the Bank and Debtors with respect to the subject matter hereof and supersedes all oral negotiations and prior writings with respect to the subject matter hereof.

33. No amendment or extension of this Stipulation, and no waiver of any one or more of the provisions hereof, shall be effective unless set forth in writing and signed by the Bank and Debtors.

34. This Stipulation: (a) shall be binding on the Debtors and Bank and, where applicable, their respective predecessors, successors, agents, and permitted assigns (including, as to the Debtors, any trustee); and (b) shall inure to the benefit of the Debtors and Bank and, where

applicable, their respective predecessors, successors, agents, and permitted assigns; provided, however, that the Debtors may not assign its rights hereunder without the written consent of the Bank, and any such assignment or attempted assignment by the Debtors shall be void and of no effect with respect to the Bank.

35. The performance of the Bank's and Debtors' obligations under this Stipulation are expressly conditioned upon the approval by the Court of this Stipulation.

36. The Debtors and Bank represents and warrants to each other that this Stipulation has been duly and validly executed and delivered and that the Stipulation constitutes a valid and legally binding obligation subject only to approval by the Court.

37. No rights are intended to be created hereunder for the benefit of any third party, creditor, or incidental beneficiary.

38. Except as expressly provided herein, the parties' execution of this Stipulation shall not be deemed to constitute a waiver of any of their respective rights or remedies under the Bankruptcy Code or other applicable law. By way of amplification, but not limitation, the Bank is not waiving any of its rights and remedies with respect to any of its claims, rights, liens, security interests, or remedies under or contained in the Pre-Petition Loan Documents. In addition, the Bank does not waive any right to seek additional adequate protection in the future or to object to, or refuse any request of the Debtors or any trustee appointed in the bankruptcy cases, for consent to, the use, sale, or other disposition of any Pre-Petition Collateral or Post-Petition Collateral, and/or the use, sale, or other disposition of other property or assets of the Debtors.

39. This Stipulation may be executed in any number of counterparts and by the different parties on separate counterparts. Each such counterpart shall be deemed an original, but all such counterparts together shall constitute one and the same Stipulation.

40. A further hearing to consider whether the Debtors' use of Cash Collateral shall be held on **June 26, 2014 at 2:00 p.m. before the Honorable Alan H.W. Shiff, United States Bankruptcy Judge at the U. S. Bankruptcy Court, 915 Lafayette Boulevard, Bridgeport, Connecticut.**

41. A copy of this Stipulation shall be served on or before June 6, 2014, by the Debtors' counsel upon (a) counsel to the Committee, if one has been appointed, and, if not, the twenty largest unsecured creditors in the bankruptcy case under Fed. R. Bankr. P. 1007(d), (b) the Office of the United States Trustee, (c) all parties who have timely filed requests for notices under Fed. R. Bankr. P. 2002, (d) counsel for the Bank, and (e) all parties known to the Debtors to have liens on or a security interest in the Cash Collateral. The Debtors shall immediately file with the Clerk a Certificate of Service of said mailing.

42. Notwithstanding Rule 6004(g) of the Federal Rules of Bankruptcy Procedure or any other rule of procedure, this Stipulation shall take effect immediately upon its entry.

43. The Court shall retain exclusive jurisdiction to enforce and interpret the terms of this Stipulation.

IN WITNESS WHEREOF, the Debtors and Bank, by and through their counsel, have caused this Stipulation to be executed on the date set forth above.

By: /s/ James Berman
    James Berman
    Zeisler & Zeisler, P.C.
    10 Middle Street, 15th Fl.
    Bridgeport, CT 06604

    *Counsel for the Debtor*

By: /s/ Scott M. Esterbrook
    Scott M. Esterbrook
    Reed Smith LLP
    1717 Arch Street
    Philadelphia, PA 19103

    *Counsel for the Bank*

So ORDERED, this 5th day of June 2014.

**By the Court**

*/s/ Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge

**EXHIBIT A**

**BUDGET**

EXHIBIT A
Latex Foam International LLC Consolidated
Cash Flow Projection Worksheet
$(000's)

Latex International 15 Week Cash Flow Forecast

| Week ending | 1<br>6-Jun | 2<br>13-Jun | 3<br>20-Jun | 4<br>27-Jun | Jun-14 |
|---|---|---|---|---|---|
| RCMA/Centrotrade | 80 | 80 | 80 | 80 | 321.4 |
| Goodyear/BASF/SBR | 111 | 111 | 111 | 111 | 442.1 |
| Tiarco - Octocure554T (weekly) | 49 | 0 | 49 | 0 | 98.0 |
| Tiarco - Octosol449 (weekly) | 18 | 0 | 0 | 18 | 35.6 |
| Tiarco-specialty (DPG,ZDE,Zinc/oncepermo) | 3 | 14 | 3 | 14 | 34.2 |
| Praxair/Esquire/CO2 | 8 | 8 | 8 | 8 | 30.0 |
| Feldspar/Minspar200 (weekly) | 3 | 3 | 3 | 3 | 11.7 |
| Microtek/BASF/Cekison (once per mo) | 0 | 10 | 0 | 10 | 20.6 |
| GL-4153 Polyurethane Gel | 0 | 0 | 0 | 24 | 24.0 |
| Anthracite/Graphite | 0 | 0 | 0 | 3 | 3.0 |
| DeWolf - Cream of Tartar | 0 | 1 | 0 | 1 | 2.0 |
| Fretote (twice per month) | 0 | 3 | 3 | 3 | 10.9 |
| PolyOne - Geon 471 (once per month) | 0 | 5 | 0 | 5 | 10.0 |
| Cmp Freight (Pittman, Dana, Martell, Shipley | 3 | 3 | 3 | 3 | 12.0 |
| Global Pallets/Pallet Outlet | 5 | 5 | 5 | 5 | 20.0 |
| Unicorr - Corrugated | 10 | 10 | 10 | 10 | 40.0 |
| Carter-McLeod | 2 | 2 | 2 | 2 | 8.7 |
| Tissue Paper (once per month) | 2 | 3 | 2 | 3 | 8.0 |
| Quilt Backing (twice per month)-Hanes | 0 | 2 | 0 | 2 | 4.0 |
| Pillow (Ruckel/Royal/Abs Knits/Velocity) | 20 | 20 | 20 | 20 | 80.0 |
| Unilatex/Poly/Artilat | 5 | 0 | 5 | 0 | 10.0 |
| **Total Latex & Other Raw Materials** | **321** | **279** | **303** | **324** | **1,226** |
| | | | | | |
| **Freight (Frachi, K&N, SPC, R&R, Unisource)** | | | | | |
| Fracht/Raia/Schneider | 15 | 15 | 15 | 15 | 60.0 |
| 3 Trucks per week to LITX | 9 | 9 | 9 | 9 | 36.0 |
| R&R/SPC/Bemak/JB Hunt | 25 | 25 | 25 | 25 | 100.0 |
| Unisource | 75 | 75 | 75 | 75 | 300.0 |
| UPS/FedEx | 10 | 10 | 10 | 10 | 40.0 |
| **Total Freight Costs** | **134** | **134** | **134** | **134** | **536** |
| | | | | | |
| **Other Mfg/Plant Costs** | | | | | |
| LITX Plant/Supplies/Glue/Pallets | 5 | 5 | 5 | 5 | 20.0 |
| CT Fabrication/Supplies/Glue | 5 | 5 | 5 | 5 | 20.0 |
| Electricity | 0 | 0 | 0 | 100 | 100.0 |
| Gas | 0 | 0 | 0 | 80 | 80.0 |
| MRO/Maint/Supplies/Plant | 15 | 15 | 15 | 15 | 60.0 |
| Waste Water/United Industrial/Tradebe | 13 | 13 | 13 | 13 | 52.0 |
| Water/BHC/Drum Waste | 8 | 8 | 8 | 8 | 32.0 |
| **Total Other Mfg/Plant Costs** | **46** | **46** | **46** | **226** | **364** |
| | | | | | |
| **Facility Costs** | | | | | |
| River Road Facilities | 5 | 5 | 5 | 5 | 20.0 |
| Facility Rents | | 45 | 16 | 42 | 103.0 |
| **Total Facility Costs** | **5** | **50** | **21** | **47** | **123** |
| | | | | | |
| **Bliss Material Costs** | | | | | |
| BLISS/Colonial/EC Retail | 10 | 10 | 10 | 10 | 40.0 |
| Lava/Lebanon - | 50 | 50 | 50 | 50 | 200.0 |
| Hickory/WG&R - foundations | 20 | 20 | 20 | 20 | 80.0 |
| **Total Bliss Material Costs** | **80** | **80** | **80** | **80** | **320** |
| | | | | | |
| **Total Operating & Mfg Costs** | **586** | **589** | **584** | **811** | **2,569** |
| | | | | | |
| **Other Costs** | | | | | |
| Hourly Wages - LINE | 15 | 12 | 12 | 12 | 51.0 |
| Hourly Wages - LITX | 7 | 7 | 7 | 7 | 28.0 |
| Hourly Wages & benefits - Foam Factory | 62 | 50 | 50 | 50 | 210.8 |
| Biweekly Salaries | 157 | | 106 | | 263.0 |
| 401k | 3 | 13 | 3 | 13 | 32.0 |
| **Total Payroll** | **244** | **82** | **178** | **82** | **585** |
| | | | | | |
| **Other Admin & Employment Costs** | | | | | |
| Medical/Dental | 0 | 0 | 150 | 0 | 150.0 |
| Accounting/IT/Mktg/Legal/HR | 15 | 15 | 15 | 15 | 60.0 |
| **Total Other Admin/Employment Costs** | **15** | **15** | **165** | **15** | **210** |

**Selling & Marketing Costs**

# Latex International 15 Week Cash Flow Forecast

| | | | | | |
|---|---|---|---|---|---|
| **Latex Foam International LLC Consolidated** | | | | | |
| Travel Expenses - Admin/Ops/Sales | 10 | 0 | 10 | 0 | 20.0 |
| **Total Selling & Mktg Costs** | **10** | **0** | **10** | **0** | **20** |
| | | | | | |
| **BLISS Selling Costs** | | | | | |
| BLISS Travel Expenses | 15 | 0 | 15 | 0 | 30.0 |
| BLISS Marketing/Admin/RSA/Rebates | 10 | 10 | 10 | 10 | 40.0 |
| **Total BLISS Selling Costs** | **25** | **10** | **25** | **10** | **70** |
| | | | | | |
| **All Other Costs, incl Insurance/Taxes** | | | | | |
| Bank Principal & Interest/CC Fees | | | | | 0.0 |
| Insurance (workers comp/liability) | | 42 | | | 42.0 |
| Property Insurance | 32 | | | | 32.0 |
| Domestic and Export Credit Insurance | | | | | 0.0 |
| Capital expenditures | | | | | 0.0 |
| OSHA/DEEP | | | | | 0.0 |
| Other/Taxes | | | | | 0.0 |
| Over Advance Payment/Restructuring | | | | | 0.0 |
| US Trustee Fees | | | | | 0.0 |
| **Total All Other Costs, incl Insurance/Taxes** | **32** | **42** | **0** | **0** | **74** |
| | | | | | |
| **Total Other Expenses** | 326 | 149 | 378 | 107 | 959 |
| | | | | | |
| **Total Disbursements** | **912** | **738** | **961** | **918** | **3,528** |