# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | |
|---|---|
| In re:<br><br>LATEX FOAM INTERNATIONAL, LLC,<br>PURE LATEXBLISS, LLC,<br>LATEX FOAM INTERNATIONAL<br>    HOLDINGS, INC.,<br>PLB HOLDINGS, LLC,<br>LATEX FOAM ASSETS ACQUISITION,<br>    LLC,<br><br>            Debtors. | Chapter 11<br><br>Case No. 14-50845<br>Case No. 14-50846<br>Case No. 14-50847<br><br>Case No. 14-50848<br>Case No. 14-50869<br><br>Jointly Administered under<br>Case No. 14-50845 |

# JOINT PLAN OF REORGANIZATION OF DEBTORS
## AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

COUNSEL TO DEBTORS AND
DEBTORS-IN-POSSESSION
James Berman, Esq.
Craig I. Lifland, Esq.
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604

COUNSEL TO OFFICIAL COMMITTEE
OF UNSECURED CREDITORS
Michael E. Baum, Esq.
Brendan Best, Esq.
SCHAFER AND WEINER
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI  48304

## PLAN OF REORGANIZATION

## INTRODUCTION

Please refer to the Disclosure Statement, which accompanies this Plan, for a discussion of, among other things, the Debtors' history, businesses, assets, results of operations, and projections of future operations, as well as a summary and description of this Plan and certain related matters. The Debtors and the Committee are the joint proponents of the Plan as defined in section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE DEBTORS AND COMMITTEE EXPRESSLY RESERVE THEIR RIGHT TO AMEND THIS PLAN OF REORGANIZATION.**

## ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

1.1    **SCOPE OF DEFINITIONS, RULES OF CONSTRUCTION.**    For the purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise assigned shall have the meanings ascribed to them in this Article I of the Plan.  Any term used in the Plan that is not defined in this Article I of the Plan, but is defined in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement shall have the meaning ascribed to such terms in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement, as the case may be.  Whenever the context requires, defined terms shall include the plural as well as the singular number.

1.2    **DEFINITIONS**

1.2.1    **"20 Day Claims"** means those Claims that are entitled to priority under section 503(b)(9) of the Bankruptcy Code.

1.2.2    **"Administrative Creditor"** means any Creditor entitled to payment of an Administrative Claim.

1.2.3    "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, (a) the actual necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the Debtors' businesses, including wages, salaries or commissions for services rendered after the Petition Date, (b) Professional Fees, (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930 and (d) all Allowed Claims that are entitled to be treated as administrative claims pursuant to a Final Order under section 546(c)(2) of the Bankruptcy Code.

1.2.4  **"Allowed"** means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in such Class.

1.2.5  **"Allowed Claim"** means

    A.    A Proof of Claim or Interest that was:

        1.    Timely filed;

        2.    Deemed filed pursuant to section 1111(a) of the Bankruptcy Code; or

        3.    Filed late with leave of the Bankruptcy Court after notice and an opportunity for hearing given to Debtor and counsel for Debtor; <u>and</u>

    B.    1.    The Claim is not a Contested Claim or a Contested Interest, <u>or</u>

        2.    The Claim is allowed (and only to the extent allowed) by a Final Order of the Bankruptcy Court.

1.2.6  "**Article**" refers to a specific article of this Plan.

1.2.7  "**Avoidance Actions**" means all claims granted to the Debtor-in-Possession or to the Estate under chapter 5 of the Bankruptcy Code.

1.2.8  "**Ballot**" means the official bankruptcy form no. 14 adopted for these Cases or a document prepared to substantially conform to same which was distributed to all Creditors and parties-in-interest in connection with the solicitation of votes for or against the Plan.

1.2.9  **"Bank"** means Wells Fargo Bank, N.A. a national banking association.

1.2.10  **"Bank Indebtedness"** means the debt owed by any Debtor pursuant to the Bank Loan Documents.

1.2.11  **"Bank Loan Documents"** means the loan documents executed by any Debtor and any and all loan documents of any kind or nature executed in connection therewith in favor of the Bank, including any documents signed which alter, amend or supplement the original documents, including without limitation, the Cash Collateral Order.

1.2.12  "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code (11 U.S.C. §§101, *et seq.*), as in effect as of the Petition Date or thereafter amended to the extent such amendments are applicable to these Cases.

1.2.13 "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division, or such other court as may have jurisdiction over this Case.

1.2.14 "**Bankruptcy Rules**" or "**Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court that became effective on August 1, 1991 and any amendments thereto, and the Federal Rules of Civil Procedure as amended and as made applicable to this Case or any proceedings therein.  To the extent applicable, Bankruptcy Rules also refers to the local rules of the U.S. District Court for the District of Connecticut, as amended and as applicable to this Case, and the local bankruptcy rules for the District of Connecticut, as amended.

1.2.15 "**Bar Date(s)**" means the date(s), if any, designated by the Bankruptcy Court as the last date(s) for filing Proofs of Claim or Interest against any Debtor, or otherwise asserting any claim against any Debtor, or, in the absence of such designation as shall be applicable under the Bankruptcy Rules.

1.2.16 "**Bliss**" means Pure LatexBliss, LLC, a Georgia limited liability company, the Debtor in Case No. 14-50846, pending before the Bankruptcy Court.

1.2.17 "**Business Day**" means any day other than a Saturday, Sunday or "Legal Holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.2.18 "**Cases**" or "**Chapter 11 Cases**" means the above-captioned Chapter 11 cases of the Debtors pending in the Bankruptcy Court.  The phrase "Case" when used with reference to a particular Debtor means the particular case under Chapter 11 if the Bankruptcy Code that such Debtor commenced in the Bankruptcy Court.

1.2.19 "**Cash**" means legal tender of the United States or the equivalence thereof.

1.2.20 "**Cash Collateral Order**" means the *Interim Stipulation and Order (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection, and (C) Scheduling a Final Hearing pursuant to Bankruptcy Rule 4001*, entered by the Bankruptcy Court at docket no. __, as amended by the *Second Interim Stipulation and Order (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection, and (C) Scheduling a Final Hearing pursuant to Bankruptcy Rule 4001*, [DN 105, July 11, 2014]; the *Third Interim Stipulation and Order (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection, and (C) Scheduling a Final Hearing pursuant to Bankruptcy Rule 4001*[DN 142, August 1, 2014], and the *Fourth Interim Stipulation and Order (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection, and (C) Scheduling a Final Hearing pursuant to Bankruptcy Rule 4001*[DN 208, September 4, 2014], and the *Fifth Interim Stipulation and Order (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection, and (C) Scheduling a Final Hearing pursuant to Bankruptcy Rule 4001*[DN 244, October 1, 2014], and any subsequent Cash Collateral Orders.

1.2.21  **"Causes of Action"** means any and all present or future claims, rights, legal and equitable defenses, offsets, recoupments, actions in law or equity or otherwise, choses in action, obligations, guaranties, controversies, demands, action suits, damages, judgments, third-party claims, counter-claims, cross-claims against any Person or Entity, whether known or unknown, liquidated or unliquidated, foreseen or unforeseen, existing or hereafter arising, whether based on legal or equitable relief, whether arising under the Bankruptcy Code or federal, state, common, or other law or equity, whether or not the subject of a pending litigation or proceedings on the Effective Date or thereafter, including without limitation, all other actions described in the Plan, including all Avoidance Actions.

1.2.22  "**Claim**" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.2.23  **"Class"** means a category of Holders of Claims or Interests as described in Article III of this Plan.

1.2.24  **"Committee"** means the official committee of unsecured creditors which has been formed pursuant to Section 1102 of the Bankruptcy Code in these Cases. *See* Document No. 61.

1.2.25  **"Collateral"** means any property or interest in property of any Estate subject to an unavoidable Lien securing the payment or performance of a Secured Claim.

1.2.26  **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order.

1.2.27  **"Confirmation Hearing"** means the hearing to consider the confirmation of this Plan under section 1128 of the Bankruptcy Code.

1.2.28  **"Confirmation Order"** means the order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.2.29  **"Contested"** means, when used in reference to a Claim or Interest in this Plan, any Claim or Interest as to which any Debtor or any other party-in-interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Code, Bankruptcy Rules and this Plan, which objection has not been determined by a Final Order.

1.2.30  **"Creditor"** means any Holder of a Claim against any Debtor(s).

1.2.31  **"Cure"** means the payment or other honor of all obligations required to be paid or honored in connection with assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including, to the extent such obligations are

enforceable under the Bankruptcy Code and applicable non-bankruptcy law:  (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such lesser amount as may be agreed upon by the parties, under such executory contract or unexpired lease.

1.2.32 "**Debtor**" or "**Debtor-in-Possession**" means any of LFAA, LFI, LFIH, Bliss, or PLBH.

1.2.33 "**Debtors**" or "**Debtors-in-Possession**" means all of LFAA, LFI, LFIH, Bliss, or PLBH.

1.2.34 "**DECD**" means the Department of Economic and Community Development of the State of Connecticut.

1.2.35 "**DECD Agreement**" means the Assistance Agreement by and between the State of Connecticut acting by the Department of Economic and Community Development and Latex Foam International, LLC, dated July 23, 2012, and documents related thereto.

1.2.36 "**Disallowed**" means (a) a Claim or Interest or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or Interest or any portion thereof that is listed in any Debtor's Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or Interest or any portion thereof that is not listed in any Debtors' Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.2.37 "**Disclosure Statement**" means the written Disclosure Statement that relates to this Plan, included herewith, as amended, supplemented or modified from time to time, and that was prepared and distributed in accordance with section 1125 of the Bankruptcy Code and applicable Bankruptcy Rules.

1.2.38 "**Disputed**" means with respect to any Claim or Interest, any Claim or Interest or portion thereof, that is neither an Allowed nor Disallowed.

1.2.39 "**Effective Date**" means the first Business Day after the Confirmation Order becomes a Final Order.

1.2.40 "**Estate**" means the estate of any Debtor in such Debtor's Case. The phrase "Estates" means the Estates of all Debtors in the Chapter 11 Cases.

1.2.41 **"Exculpated Claim"** means any Claim against any Debtor or its officers, employees, agents or Professionals related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the filing of the Disclosure Statement or Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other agreement.

1.2.42 **"Final Order"** means an order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken, or (ii) any timely appeal has been finally determined or dismissed and the time for any successive appeal has expired and no successive appeal has been timely taken or (iii) an appeal has been timely taken but such order has not been stayed within ten (10) days after the filing of such appeal.

1.2.43 **"GAAP"** means generally accepted accounting principles.

1.2.44 **"Governmental Unit"** has the meaning ascribed to it in section 101(27) of the Bankruptcy Code.

1.2.45 **"Group"** means the categories of Claims receiving payment in accordance with the terms set forth herein.

1.2.46 **"Holder"** means a Person holding a Claim, Interest, or Lien, as applicable.

1.2.47 **"Impaired"** means, when used with reference to a Claim or Interest, that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.2.48 **"Intracompany Claims"** means a Claim by a Debtor against another Debtor.

1.2.49 **"Intracompany Interests"** means any Interests held by one Debtor in or against another Debtor.

1.2.50 **"Interest"** means any equity interests in any Debtor, of any kind or nature, including without limitation, any corporate share or company member interests or option to purchase any of the foregoing.

1.2.51 **"Interest Rate"** means, as the case requires, either (i) the prime rate of interest as published in the *Wall Street Journal* on the Effective Date plus one (1) percent, (ii) the rate of interest provided in the applicable document between a Debtor and such Creditor, (iii) the rate of interest expressly stated in the Treatment of Claims section in Article III herein, or (iv) the rate of interest required by applicable non-bankruptcy law.

1.2.52 **"Lien"** means a charge against, or an interest in, property to secure payment of a debt or performance of an obligation.

1.2.53 **"LFAA"** means Latex Foam Assets Acquisition, LLC, a Connecticut limited liability company, the Debtor in Case No. 14-50869, pending before the Bankruptcy Court.

1.2.54 **"LFI"** means Latex Foam International, LLC, a Connecticut limited liability company, the Debtor in Case No. 14-50845, pending before the Bankruptcy Court.

1.2.55 **"LFIH"** means Latex Foam International Holdings, Inc., a Connecticut corporation, the Debtor in Case No. 14-50847, pending before the Bankruptcy Court.

1.2.56 **"LFIH Trust"** means that trust established for the benefit of Unsecured Creditors pursuant to Article 3.4 of this Plan and governed by the document attached hereto as **Exhibit [1.2.56]**.

1.2.57 **"Person"** shall have the meaning given to it under section 101(41) of the Bankruptcy Code.

1.2.58 **"Petition Date"** means May 30, 2014, which is the date that each Debtor voluntarily filed its petition for relief pursuant to chapter 11 of the Bankruptcy Code.

1.2.59 **"Plan"** or **"Plan of Reorganization"** means this Plan of Reorganization, as it may be altered, amended, supplemented or modified from time to time.

1.2.60 **"Plan Supplement"** refers to the implementing documents necessary to effectuate this Plan, including, but not limited to, corporate documentation and documents providing for the treatment of Claims in Classes I, II, and III of this Plan, which shall be on file with the Clerk of the Bankruptcy Court no later than twenty (20) days prior to the Confirmation Hearing, or such later date as may be approved by the Bankruptcy Court. All documents in the Plan Supplement shall be in form and substance satisfactory to the Debtors and Committee.

1.2.61 **"PLBH"** means PLB Holdings, LLC, a Delaware limited liability company, the Debtor in Case No. 14-50848, pending before the Bankruptcy Court.

1.2.62 **"Preferred Stock"** means, as required by Section 3.3, the share of convertible preferred stock, having the terms set forth in the Certificate of Incorporation as amended of Reorganized LFIH and as provided in the Plan Supplement and generally described in Section 3.3.

1.2.63 **"Priority Claim"** means a Claim under or entitled to priority under section 507(a) of the Bankruptcy Code and which is not a Secured Claim or an Administrative Claim.

1.2.64 **"Priority Tax Claim"** means a claim under or entitled to priority under section 507(a)(8) of the Bankruptcy Code and which is not a Secured Claim or an Administrative Claim.

1.2.65  **"Priority Creditor"** means any Creditor entitled to payment of a Priority Claim.

1.2.66  **"Professional"** means any professional employed in these Chapter 11 Cases pursuant to sections 327 or 1103 of the Bankruptcy Code seeking compensation or reimbursement of expenses in connection with the Case pursuant to section 503(b) of the Bankruptcy Code or otherwise.

1.2.67  **"Professional Fees"** means the fees and reimbursement for disbursements and expenses owed to Professionals.

1.2.68  **"Proof of Claim"** means a claim that was either scheduled by any Debtor on its Schedules as a Claim which was not disputed, not contingent and liquidated, or a Claim filed by a Holder of a Claim before the Bar Date.

1.2.69  **"Pro-Rata"** means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including disputed or Contested Claims) in such Class, unless the Plan expressly provides otherwise.

1.2.70  **"Reorganized Debtor"** means any Debtor upon the occurrence of the Effective Date of the Plan.  The phrase "Reorganized Debtors" means all Debtors upon the occurrence of the Effective Date of the Plan.

1.2.71  **"Reorganized Debtor's Net Income"** means the Reorganized Debtors' net income from operations after deduction of all expenses including, without limitation, all costs of reorganization, any payments required on priority and/or secured tax claims, principal debt payments, capital lease payments, and accrued capital improvements and expenditures.

1.2.72  **"Schedules"** means the schedules of assets and liabilities, the list of Holders of Interests, and the statement of financial affairs filed by any Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1017, as such schedules and statements have been, or may be, supplemented or amended through the Confirmation Date.

1.2.73  **"Section"** refers to a specific section or subsection of this Plan, unless otherwise set forth herein.

1.2.74  **"Secured Claim"** means a Claim secured by a Lien on property in which any Estate has an interest but only to the extent of the value of the Creditor's interest in such Estate's interest in the property as of the Petition Date and only if such Secured Claim is Allowed.

1.2.75  **"State"** means the State of Connecticut, Department of Revenue Services.

1.2.76  **"Unsecured Claim"** means a Claim that is not a Secured Claim and is not an Administrative Claim or a Priority Claim.

1.2.77 **"Unsecured Creditor"** means any Creditor that holds an Unsecured Claim.

1.3 **RULES OF INTERPRETATION.** For purposes of the Plan;

1.3.1 Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially on such terms and conditions.

1.3.2 Any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented.

1.3.3 Any reference in the Plan to a docket number ("<u>DN</u>") is a reference to a docket number in the LFI Case, unless specifically noted to the contrary.

1.3.4 The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, unless expressly stated otherwise.

1.3.5 Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or effect the interpretation of the Plan.

1.3.6 The rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules apply to this Plan.

1.3.7 The Disclosure Statement may be used as an aid for interpretation of this Plan to the extent that any provision of this Plan is determined to be vague or ambiguous. However, to the extent any statement in the Disclosure Statement conflicts with any provision of this Plan, this Plan controls.

1.4 **COMPUTATION OF TIME.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall govern.

1.5 **GOVERNING LAW.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Connecticut shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

# ARTICLE II

## TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN

**A.     INTRODUCTION**

1.     All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the classes set forth below.  In accordance with Bankruptcy Code §1123(a)(1), Groups I, II, III, IV, and V below have not been classified.

**B.     CONSOLIDATION**

1.     The Plan proposes that the Debtors shall be jointly and severally liable for the payments due under the Plan, and for the substantive consolidation of the estates for voting and distribution purposes only.  As a result, this Plan consolidates the classes of creditors in the treatment sections set forth below.  All Intracompany Claims shall be deemed extinguished on the Effective Date.  Notwithstanding such substantive consolidation, the Debtors shall not effect a merger of their corporate entities on the Effective Date and shall remain distinct corporate entities post confirmation.

**C.     ADMINISTRATIVE AND PRIORITY CLAIMS:**

1.     GROUP I – ADMINISTRATIVE CLAIMS.  The Claims of Group I shall consist of all Allowed Administrative Claims, including any Professional Fees and taxes that qualify as Administrative Claims.

(a)     Claims included in this Group shall be Administrative Claims notwithstanding (i) the confirmation of this Plan, (ii) the occurrence of the Effective Date, and/or (iii) the filing of any subsequent proceeding under any chapter of the Bankruptcy Code.  The Reorganized Debtors shall remain responsible for every Claim in this Group if any such Claim is not paid on or before the Effective Date.

(b)     Each claimant in this Group shall be paid the full amount of its Claim on such date as may be mutually agreed upon between the Debtors and/or the Reorganized Debtors and the particular claimant, or, if no such date is agreed upon, the latest of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between the Debtors and such Administrative Creditor, or (iii) the date upon which the Bankruptcy Court enters its order, if necessary, allowing and approving the Debtors' payment of such Administrative Claim and such order becomes a Final Order.

(c)     The Bar Date for asserting any Administrative Claim is two (2) months after the Effective Date.  Any Administrative Claim first asserted after the Bar Date shall be deemed Disallowed and shall not be entitled any payment under this Plan.  The objection procedures in Article XII of this Plan are applicable to the any Administrative Claim.

2.    **GROUP II – 20 DAY ADMINISTRATIVE CLAIMS**.   The Administrative Claims of Group II shall consist of Holders of Allowed 20 Day Claims.   The Claimants in this Group shall receive on account of such 20 Day Claim an amount in Cash equal to the Claimant's 20 Day Claim on the later of (i) the Effective Date, (ii) the date otherwise agreed between the respective Claimant and the Debtors, or (iii) the date upon which the Bankruptcy Court enters its order, if necessary, allowing and approving the Debtor's payment of such 20 Day Claim and such order becomes a Final Order.

3.    **GROUP III – PRIORITY TAX CLAIMS OF THE STATE.**   The State's Priority Tax Claim, estimated at $104,156.12 for Sales and Use Tax, shall be paid in one of the following alternatives, at the option of the applicable Debtor:  (i) paid in full on the Effective Date or (ii) as determined by the applicable Debtor over the statutory time period provided in section 1129(a)(9) plus interest calculated at the Interest Rate.

4.    **GROUP IV – PRIORITY TAX CLAIMS.**   The Claims of Group IV shall consist of the Allowed Claims that are entitled to priority under section 507(a)(8) of the Bankruptcy Code other than Group III Claims.   The Claimants of this Group shall receive on account of such Priority Claim annual payments in an amount equal to the allowed amount of such Priority Claim over a period not ending later than five (5) years after the Petition Date, plus interest calculated at the Interest Rate.   The first annual payment shall be made on the first Business Day that is one year after the Petition Date.

5.    **GROUP V – OTHER PRIORITY CLAIMS**.   The Claims of Group V shall consist of all other Priority Creditors entitled to receive priority for their Allowed Claim under section 507(a) of the Bankruptcy Code.   Unless otherwise agreed between the particular claimant and the Debtors, the Allowed Claims of this Group will be paid upon the latest of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between the Debtors and such Administrative Creditor, or (iii) the date upon which the Bankruptcy Court enters its order, if necessary, allowing and approving the Debtors' payment of such Administrative Claim and such order becomes a Final Order.

D.    **DETERMINATION OF PRIORITY CLAIMS**:

Subject to section 505(a)(2) of the Bankruptcy Code, the Debtors and/or the Reorganized Debtors shall have the right to challenge any Priority Claim through the claims objection process set forth in Article XII, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes, and the computation of any tax.   The right to challenge these Claims shall include, without limitation, an objection to the assessment of any Debtor's real or personal property that may or may not have been made by the respective taxing authority.

# ARTICLE III

## SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER THE PLAN AND THOSE IMPAIRED UNDER THE PLAN

The Plan divides Claims and Interests into four (4) Classes and treats them as follows:

3.1     **Class I**:  Class I consists of the Allowed Secured Claim of the Bank.

(a)     The Bank's Claim shall be Allowed in the amount of $16,408,344.64.

(b)     In payment of the Bank's Allowed Secured Claim, on the Effective Date, the Debtors shall execute and deliver to the Bank a replacement Note that will provide, inter alia, that the Bank receive monthly principal and interest payments, amortized over thirty (30) years, for eighty-three (83) months following the Effective Date, and the remaining balance of principal and accrued but unpaid interest shall be due in full on the eighty-fourth (84th) month following the Effective Date.

(c)     The Bank's Allowed Secured Claim and replacement note shall bear interest from and after the Effective Date at the rate of interest equal to a U.S. Treasury Note with a seven (7) year term as of the day before the Confirmation Date plus 200 basis points, or such interest rate as otherwise determined by the Bankruptcy Court.

(d)     Collateral for the replacement note shall consist of all collateral that secured the Bank's claims as of the Petition Date, and supplemented by the collateral provided for in the Cash Collateral Orders, with such liens to have the same priority as existed on the Petition Date.

(e)     The loan documents reflecting the treatment of the Bank Claim shall be included in the Plan Supplement, including, but not limited to, a new note and a new security agreement.   All pre-Effective Date Bank Loan Documents shall be extinguished on the Effective Date and be of no further force or effect.

(f)     This Class is Impaired.

3.2     **Class II**.  Class II consists of the Secured Claim of the DECD, if and when Allowed.

(a)     The DECD's Secured Claim, is estimated to be equal to Two Million Five Hundred Thousand ($2,500,000.00) and 00/100 Dollars; however, the secured status is currently Disputed.

(b)     If the DECD votes in favor of the Plan, then:

(i)     In full and complete satisfaction of the DECD's Secured Claim (including the promissory note in the amount of Two Million Five Hundred Thousand ($2,500,000) Dollars plus any interest), the Debtors shall maintain their current employment and related obligations set forth in Section 2.17 of the DECD Agreement.

(ii)    In the event the Debtors default in maintaining employment levels as provided in Section 3.2 (b) (i) above, then the DECD claim shall be reinstated solely to the extent provided in Section 2.17 of the DECD Agreement.

(iii)    The Plan Supplement shall contain an amendment to the DECD Agreement providing for modifications described herein.

(c)    If the DECD votes to reject the Plan, then the DECD Secured Claim shall be Disallowed, the DECD Claim shall be an Allowed Class III Unsecured Claim, and the Debtors shall have no obligation to retain or employ any individuals in the State of Connecticut as of the Effective Date.

(d)    This Class is Impaired.

3.3    **Class III**.  Class III consists of the Holders of Allowed Unsecured Claims against the Debtors that have been scheduled in the amount of $12,753,307.34 [1], who shall receive, in full, complete and final satisfaction and release of their Allowed Unsecured Claims, the following:

(a)    The Class III claims shall be converted into the Preferred Stock of LFIH, to be issued on the Effective Date.

(b)    On the Effective Date, the LFIH Trust shall be established for the benefit of Allowed Class III claims, with the corpus of the LFIH Trust to be the Preferred Stock of LFIH.  The LFIH Trust shall have one trustee, and the beneficiaries shall be the holders of Class III Allowed Claims.

(c)    <u>Attributes of Preferred Stock</u>.

(i)    The Preferred Stock shall have a liquidation preference equal to fifty (50%) percent of the aggregate face amount of all Allowed Unsecured Claims in years 1 through 3 following the Effective Date.  The liquidation preference shall increase to sixty (60%) percent commencing in year 4 and at all times thereafter.

(ii)    LFIH shall have the right to redeem the Preferred Stock for its liquidation preference at any time.

(iii)    The Preferred Stock shall not provide for any mandatory redemption or payment.

(iv)    Until the Preferred Stock is redeemed or otherwise ceases to be outstanding, the trustee of the LFIH Trust shall appoint one non-voting observer to attend meetings of the LFIH board of directors as an observer with customary information rights.  The Reorganized

---

[1] This amount includes the claim of the DECD in the amount of $2,500,000.  If the DECD accepts the Debtors' Plan, the aggregate allowed unsecured claims shall be approximately $10,253,031.31, which amount shall be further reduced by the amount of 20 Day Claims.

Debtors shall pay $20,000.00 to the LFIH Trust on the Effective Date and annually thereafter to cover the costs and fees associated with the LFIH Trust's non-voting observer.

(v)   The Common Stock shall not have any right to any dividends or other distributions of Reorganized Debtors' Net Income until the Preferred Stock has been redeemed or otherwise retired; provided that the foregoing shall not restrict the right of such entity to pay commercially reasonable employment compensation or otherwise do business with affiliates on commercially reasonable terms in the ordinary course of business (with pre-bankruptcy levels and agreements being deemed commercially reasonable and in the ordinary course of business).

(vi)   For as long as the Preferred Stock is outstanding, the LFIH Trustee shall have the right to review the books and records of the Reorganized Debtors  and shall receive timely interim pro forma quarterly financial statements within 45 days after the end of such quarter, and shall be provided reviewed or audited annual financial statements.

(vii)   The holders of Preferred Stock shall have voting rights pursuant to applicable Connecticut law solely with respect to certain fundamental actions (such as a change in control or liquidation) as more fully described in the Plan Supplement.

(viii)   The Plan Supplement shall contain all terms and provisions of the Preferred Stock.

(d)   The Debtors covenant to do business with holders of Allowed Unsecured Claims in Class III on commercially reasonable and customary market competitive trade and pricing terms during the 3 year period following the Effective Date.  Such trade terms shall take into consideration historical credit terms, pricing terms, and product values and discounts, allowances, rebates, product mix, alternative sources, and availability, and other applicable terms and provisions existing prior to the Petition Date that were most favorable to the Debtors in effect between the holder of an Allowed Class III claim and the Debtors prior to the Petition Date, or as otherwise agreed to by the Debtors and any such Class III creditor.

(e)   Avoidance Actions.  On the Effective Date, the Reorganized Debtors shall be deemed to have waived and released any Avoidance Action against holders of Allowed Class III claims [subject to review to determine value of the waiver].

(f)   This Class is impaired.

3.4   **Class IV.**  Class IV consists of the Interest holders in the Reorganized Debtors.

(a)   The holders of the Interests in the Debtors shall retain their Interests in each of the Reorganized Debtors as reorganized under the terms of this Plan except as their rights are altered by the issuance of the Preferred Stock to Allowed Unsecured Claims in Class III.

(b)   This class is impaired.

# ARTICLE IV
## ACCEPTANCE

4.1    **PRESUMED ACCEPTANCE OF THE PLAN.**  There are no Classes that are unimpaired under the Plan.

4.2    **PRESUMED REJECTION OF THE PLAN.**  There are no Classes that are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.3    **VOTING CLASSES:** Classes I through III are Impaired under the Plan, and Holders of Claims or Interests in such Classes shall be entitled to vote to accept or reject the Plan.

4.4.    **DEEMED ACCEPTANCE IF NO VOTES CAST.**  If no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class.

4.5    **ELIMINATION OF VACANT CLASSES.**  Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

4.6    **CRAMDOWN.**  The Debtor may request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to modify the Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification of the Plan.

# ARTICLE V
## EXECUTION AND IMPLEMENTATION OF THE PLAN

5.1    **ASSUMPTION OF LIABILITY.**  The Reorganized Debtors shall be responsible for satisfying all of the Allowed Claims in accordance with the terms and provisions of the Plan.

5.2    **SUBSTANTIVE CONSOLIDATION.**  Through this Plan, the Debtors are requesting substantive consolidation for voting and distribution purposes only.  Notwithstanding the foregoing, each Reorganized Debtor shall retain its separate and independent corporate or company existence post Effective Date.

5.3    **BOARD OF DIRECTORS AND MANAGEMENT INCENTIVE PLAN.**  On the Effective Date, the Board of Directors of Reorganized LFIH shall consist of the following individuals:  William C. Bassett, Gareth Clarke, Richard J. Coffey, David Fisher, Robert L. Jenkins, Deann E. Murphy, and John L. Pouschine.  In addition, LFIH shall establish an equity incentive plan for its management and employees, which, when combined with existing outstanding stock options, shall represent the right to purchase not less than 17.5% of the fully-diluted common stock

of LFIH as the case may be, and shall make initial grants to management under such plan promptly following the Confirmation Date which, when combined with existing outstanding stock options, shall represent not less than 8.75% of the fully-diluted common stock of LFIH.

5.4     **Permitted Refinancing**.  At any time on or after the Effective Date, the Debtors, the Reorganized Debtors, or their successors or assigns, may pay the Holder of the Class I Claim an amount equal to the greater of (1) the total amount owed under the Class I Claim, or (2) the value of the cash, inventory and receivables securing the Class I Claim (the "Cash, Inventory and Receivables") as of the Petition Date.  Notwithstanding anything in this Plan to the contrary, in accordance with section 552(a) of the Bankruptcy Code, and without regard to any exceptions including any arguments based on the "equities of the case" as set forth in section 552(b) of the Bankruptcy Code, property acquired by the Debtors after the Petition Date are not subject to the Pre-Petition Liens securing the Class I Claim, except to the extent of, and limited to, any interests granted in the Cash Collateral Order.  Any Lien of the Holder of the Class I Claim on any cash, inventory or receivables of the Reorganized Debtor shall be upon such payment released.  Any payment made pursuant to this Section shall not result in any diminution in the value of any Pre-Petition Lien on any Collateral except Cash, Inventory and Receivables, after the value of the payment is included in the calculation of the value of said Lien.

5.5     **LFIH Trust.**  On or before the Effective Date, the Trustee of the LFIH Trust and the Debtors will execute the LFIH Trust.  Under no circumstances shall any of the Debtors' or Reorganized Debtors' officers, directors, managing members, general partners or other governing authorities be entitled to compensation from any of the Debtors, Reorganized Debtors, or the LFIH Trust for services provided after the Effective Date relating to the administration of the LFHI Trust.

5.6     **DISSOLUTION OF CREDITORS' COMMITTEE**

(i)     The Creditors' Committee shall continue to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code, and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date.

(ii)    On the Effective Date, the Creditors' Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Committee's attorneys, financial advisors and other agents shall terminate except as provided herein.

(iii)   Notwithstanding anything in this Section, after the occurrence of the Effective Date, the Committee shall continue with respect to: (i) claims for compensation for the Committee's Professionals; (ii) any appeals of the Confirmation Order; and (iii) any adversary proceedings or contested matters pending as of the Effective Date to which it is a party, including final resolution of any objections to Claims filed by the Committee.

5.7     **POST-EFFECTIVE DATE PROFESSIONAL FEES.**  Any services performed or expenses incurred by any Professional on behalf of the Debtors, the Reorganized Debtors or any Committee with respect to these Cases after the Effective Date shall not be subject to the prior

review and approval of the Bankruptcy Court.  All fees and expenses of the Reorganized Debtors arising after the Effective Date shall be billed directly to the Reorganized Debtors.  The entity responsible for such fees and expenses shall pay the portion not objected to in accordance with the terms of the invoice.

**ARTICLE VI**
**EFFECT OF CONFIRMATION**

6.1     **DISCHARGE OF INDEBTEDNESS.**    Except as provided in this Plan, the occurrence of the Effective Date of this Plan shall, and does hereby act to discharge and release the Claims of all Creditors and, except as provided in Section 3.5 all Interests against the Debtors and the Reorganized Debtors, the same constituting a full, total and complete settlement with said Creditors and Interest Holders.  Except as provided in this Plan, the occurrence of the Effective Date shall also act as a merger and relinquishment of any and all Claims that Creditors have, or may have, against either of the Debtors and the Reorganized Debtors except as provided in the treatment of the Creditors in Articles II and III.  The forgoing notwithstanding, this paragraph shall not affect the rights of any taxing authority against any other entity or Person who may be liable or responsible for the taxes of the Debtors or Reorganized Debtors.

6.2     **WAIVER OF CLAIMS.  EXCEPT AS TO ANY TAXING AUTHORITY, ON THE EFFECTIVE DATE, CONFIRMATION SHALL ALSO CONSTITUTE A WAIVER BY CREDITORS OF ANY RIGHT THAT THEY MAY HAVE, UNLESS SUPPORTED BY A WRITTEN GUARANTEE (OR SIMILAR DOCUMENT), TO SEEK TO ENFORCE THEIR CLAIMS AGAINST THE INTEREST HOLDERS, WHETHER PURSUANT TO AN "ALTER EGO" CLAIM, A CLAIM FOR "PIERCING THE VEIL" ANY DEBTOR'S OR THE REORGANIZED DEBTOR'S CORPORATE EXISTENCE, OR OTHER SIMILAR CLAIM.**

6.3     **SUBORDINATED CLAIMS**.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify (or request that the Bankruptcy Court re-classify) any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

6.4     **EXCULPATION**.  Except as otherwise provided in the Plan, no Person that is acting or has acted for or on behalf of the Debtors or Reorganized Debtors shall have or incur, and such persons are hereby released and exculpated from, any Claim, obligation, Cause of Action, or liability for any Exculpated Claim, except for gross negligence or willful misconduct.  The Debtors and the Reorganized Debtors (and their respective Affiliates, agents, directors, members, managers, partners, officers, employees, advisors, and attorneys) have, and on the Effective Date shall be deemed to have, participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions made pursuant to the Plan, and therefore are not, and on account of such distributions, shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

6.5    **INJUNCTION**.    **EXCEPT AS PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AS OF THE CONFIRMATION DATE, ALL ENTITIES THAT HAVE HELD, CURRENTLY HOLD, OR MAY HOLD CLAIMS THAT HAVE BEEN DISCHARGED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN (OR WILL BE DISCHARGED UPON COMPLETION OF PAYMENTS UNDER THIS PLAN), ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST ANY OF THE DEBTORS AND THE REORGANIZED DEBTORS (OR THEIR PROPERTY) ON ACCOUNT OF ANY SUCH DISCHARGED CLAIMS, DEBTS, LIABILITIES, OR TERMINATED RIGHTS: (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE DEBTORS; AND (V) COMMENCING OR CONTINUING ANY ACTION IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY, OR IS CONSISTENT, WITH THE PROVISIONS OF THIS PLAN.**

6.6    **PROTECTIONS AGAINST DISCRIMINATORY TREATMENT**.  Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors or other Person with whom the Reorganized Debtors have been associated, solely because any Debtor has been a Debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in these Chapter 11 Cases.

6.7    **POST-EFFECTIVE DATE OPERATIONS.**  On and after the Effective Date, the Reorganized Debtors shall operate their business in the ordinary course under the terms of this Plan and applicable non-bankruptcy law.  The rules, restrictions, reports and other requirements of the Bankruptcy Code, Bankruptcy Rules and orders entered by the Bankruptcy Court shall continue to apply pending entry of a Final Decree only to the extent that such rules, restrictions, reports and other requirements expressly apply, by their terms, after confirmation and the occurrence of the Effective Date.

6.8    **SETOFFS**.  Except as otherwise expressly provided for in the Plan, the Reorganized Debtors pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed by the Holder of a Claim, may setoff against any Allowed Claim any distributions to be made pursuant to the Plan on account of such Allowed Claim, including any disbursement on account of the Preferred Shares (before any distribution is made on account such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors, as applicable, may hold against the Holder of such Allowed Claim (or against the predecessor in interest to Holder to the extent that the Holder takes

such Allowed Claim subject to setoffs and defenses that may be asserted against the predecessor in interest), to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Reorganized Debtors of any Claims, rights, setoff rights and Causes of Action that the Reorganized Debtors may possess against such Holder.  The Reorganized Debtors shall not be required to make any distributions to the Holder of any Allowed Claim to the extent that the Reorganized Debtors assert setoff rights against such Holder until after entry of a Final Order resolving such setoff rights.  In no event shall any Holder of Claims be entitled to setoff any Claim against any Claim, right, or Cause of Action of the Debtors or Reorganized Debtors unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

## ARTICLE VII
## MODIFICATION OF THE PLAN

7.1     **AMENDMENTS TO PLAN.**  The Debtors, together with the Committee, may, from time to time, propose amendments or modifications of this Plan prior to its confirmation, without leave of the Court.   After confirmation, the Debtors or Reorganized Debtors may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected Creditor(s) only, remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order or otherwise modify the Plan.

7.2     **REVOCATION OR WITHDRAWAL OF THE PLAN.**  The Debtors, together with the Committee, reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent chapter 11 plan(s).  If the Debtors revoke or withdraw the Plan, or if confirmation or consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption, assignment, or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in any manner the right of the Debtors or any other Person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person.

## ARTICLE VIII
## JURISDICTION OF THE COURT

8.     Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising from or relating to the Chapter 11 Cases to the fullest extent of applicable law, including, without limitation, all of the following:

a.      To hear and determine any timely objections to Claims, including proofs of claim, or to Administrative Claims, both before and after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate or establish the amount, priority, secured or unsecured status of any Claim in whole or part.

b.      The classification of the Claim of any Creditor and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors.  The failure by the Debtors or the Reorganized Debtors to object to, or to examine any Claim for the purposes of voting, shall not be deemed to be a waiver of any right to object to, or reexamine the Claim in whole or in part.  Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor shall not in any way be deemed to be a waiver of any right to object to or re-examine the Claim or any secured interest whether by mortgage or otherwise which secures such Claim, in whole or in part.

c.      The resolution of any Disputed Claims or Disputed Interests.

d.      To hear and determine any and all motions, adversary proceedings, application and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtors after the Effective Date including any Claims to recover assets for the benefit of any Estate, except for matters waived or released under this Plan.

e.      The determination of all questions and disputes regarding title to the assets of any Estate, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtors or the Reorganized Debtors or any other party.

f.      The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

g.      The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and as provided as in Article VII of the Plan.

h.      The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

i.      The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of any Debtor, the Reorganized Debtors or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary, to accomplish its obligations under the Plan.

j.      To hear and determine application for allowances of compensation and reimbursement of expenses of Professionals under sections 330, 331 and/or 503(b) of the Bankruptcy Code and any other fees and expenses authorized to paid or reimbursed under this Plan.

k.    To determine matters concerning local, state and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code and to determine any tax claims that may arises as a result of the transactions contemplated by this Plan.

l.    The assumption or rejection of executory contracts and/or unexpired leases, including issues related to cure rights, under Article XI of this Plan.

m.    The right to pursue any Avoidance Actions or Cause of Action.

n.    The entry of an order determining the validity of any Lien.

o.    The entry of an order concluding and terminating these Cases.

p.    To hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE IX
## TITLE TO PROPERTY

9.    **VESTING OF PROPERTY.**  Title to the property of the Debtors shall vest in the Reorganized Debtors upon the Effective Date of the Plan.  The Debtors shall be discharged from their status as Debtors-in-Possession and the affairs and business of the Reorganized Debtors shall thereafter be conducted without Court involvement except as may be governed by Articles V and VIII of the Plan. As of and following the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, Bankruptcy Rules or Bankruptcy Court Order, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

## ARTICLE X
## UNITED STATES TRUSTEE FEES

10.    **U.S. TRUSTEE FEES AND REPORTS.**  The Reorganized Debtors shall continue to remit to the office of the United States Trustee all appropriate post confirmation monthly reports/affidavits for all relevant time periods until these Cases are closed by order of the Bankruptcy Court or converted to a case under chapter 7 of the Bankruptcy Code.  The Reorganized Debtors shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for all quarters and shall continue to remit quarterly fee payments based on all disbursements, until the Cases are closed by order of the Bankruptcy Court, or converted to cases under chapter 7 of the Bankruptcy Code.

## ARTICLE XI
## TREATMENT OF EXECUTORY CONTRACTS

11.1    **EXECUTORY CONTRACTS.**  Unless addressed in Article III of this Plan or otherwise assumed or rejected by Final Order of the Bankruptcy Court, all executory contracts of any Debtor which are either: (i) not expressly assumed,r (ii) not the subject of a pending application to assumed as of thirty (30) days after the Effective Date, or (iii) not insurance contracts provided in

Section 11(A)(2) below, shall be deemed rejected.  Within the time period set forth herein, the Reorganized Debtors shall be allowed to file a Notice of Assumption of Executory Contract (the "Assumption Notice") with the Bankruptcy Court and serve the Assumption Notice upon the affected party only.  The executory contract which is the subject thereof shall thereupon be assumed subject to the provisions of this Article XI.

11.2    **INSURANCE POLICIES.**    All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as executory contracts under the Plan and are hereby expressly assumed by the Debtors.  Nothing contained herein shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including without limitation, the insurer under any of the Debtors' policies of insurance.

11.3    **REJECTION OF DAMAGE CLAIMS.**  Any Creditor who has a Claim as a result of such rejection shall have thirty (30) days after the Effective Date to file a Proof of Claim, failing which such Claim shall be disallowed in its entirety.  The solicitation of this Plan shall be sufficient informing any potential Creditor of this requirement.

11.4    **OBJECTIONS TO REJECTION DAMAGE CLAIMS.**    The Reorganized Debtors may file an objection to any Proof of Claim filed in accordance with this Section 11(3) on or before the later of (i) sixty (60) days after the filing of the Proof of Claim or (ii) the time set for the filing of objections in Section 12.1 (including any extensions).  The objection will be resolved in accordance with Article XII.

11.5    **ASSUMPTION OF UNEXPIRED LEASES.**  Subject to Section 11.6, below, upon the occurrence of the Effective Date, all unexpired leases shall be assumed, except for unexpired leases that are the subject of a motion to reject filed prior to or within thirty (30) days after the Effective Date.  The Debtors or Reorganized Debtors may file one or more omnibus motions to reject unexpired leases prior to the Effective Date and no unexpired lease listed in such omnibus motion shall be assumed under this Section 11.5 unless the lease is subsequently withdrawn by the Debtors or the motion to reject is denied as to such lease by a Final Order of the Bankruptcy Court.

11.6    **ASSUMPTION AND CURE PAYMENTS**.  All assumed executory contracts and unexpired leases shall be Cured by the Reorganized Debtors pursuant to Section 11.7, unless other provisions have been agreed to by the counter-party.  As long as the Reorganized Debtors comply with Section 11.7, all executory contract and unexpired lease counterparties must fulfill all contract and lease obligations and are enjoined from declaring a default for non-performance due to the bankruptcy or pre-assumption default.

11.7    **RESOLUTION OF CURE CLAIM DISPUTES.**  For each executory contract or unexpired lease to be assumed under this Article XI, within thirty (30) days after the Effective Date, the Debtors or Reorganized Debtors shall deliver a written proposal to the contract counter-party describing the method, timing and amount of any proposed Cure.  The Reorganized Debtors' proposal shall be binding unless the contract counter-party delivers to the Reorganized Debtors' counsel, within fifteen (15) days after receipt of the proposal, a written objection detailing all reasons for the counter-party's objection and setting forth a counter-proposal.  In the event that the

dispute cannot be resolved, either party may petition the Bankruptcy Court to resolve the dispute through filing of a properly noticed motion. In the event that the Bankruptcy Court sets a Cure amount greater than the Cure amount proposed by the Debtors, the Debtors shall have ten (10) Business Days to Cure or reject the contract or lease by filing a notice of rejection on the docket in this Case and sending notice thereof to the affected Creditor.

11.8    **PRELIMINARY ASSUMPTION PENDING CHALLENGES.** The assumption of a contract or lease under this Article does not prejudice the Debtors' or Reorganized Debtors' right to challenge whether any contract or lease is an executory contract or unexpired lease, as opposed to a disguised security agreement. If the Debtors or Reorganized Debtors challenges an assumed executory contract or unexpired lease, the Reorganized Debtors shall not be required to comply with the disputed portions of the executory contract or unexpired lease until a Final Order is entered resolving the dispute. If the dispute is not resolved in the Reorganized Debtors' favor, the Reorganized Debtors have the right to reject the executory contract or unexpired lease for a period of ten (10) days after entry of a Final Order by filing a notice of rejection on the docket in this Case and sending notice thereof to the affected Creditor.

## ARTICLE XII
## OBJECTIONS TO CLAIMS

12.1    **TIMING OF OBJECTIONS.** The Debtors or the Reorganized Debtors may object to the allowance of any Claim, or the extent, validity and enforcement of any security interest, whether listed on the Schedules filed by any Debtor or filed by any Creditor, on or before the later of (a) sixty (60) days from the date of filing of any Proof of Claim or (b) eight (8) months after the Effective Date.

12.2    **EXTENT OF OBJECTIONS.** As part of the objection process set forth in paragraph 12.1 above, and without limiting same, the Debtors and/or the Reorganized Debtors shall have the right to object to any Lien.

12.3    **CLAIM DISPUTE RESOLUTION PROCEDURES.** The Reorganized Debtors shall be authorized to resolve all Disputed Claims by withdrawing or settling objections thereto, or by litigating to judgment in the Bankruptcy Court, or such other court having competent jurisdiction, the validity, nature and/or amount thereof. If the Reorganized Debtors agree with the Holder of a Disputed Claim to compromise, settle and/or resolve a Disputed Claim by granting such Holder and Allowed Claim, then the Reorganized Debtors may compromise, settle and/or resolve such Disputed Claim without Bankruptcy Court approval.

12.4    **CLAIMS BAR DATE.** Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the applicable Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date such late Claim has been deemed timely filed by a Final Order.

## ARTICLE XIII
## PROVISIONS REGARDING DISTRIBUTION

13.1 **DISPUTED PAYMENTS**. Notwithstanding anything in this Plan to the contrary, the Debtors or Reorganized Debtors shall not be obligated to make any payments towards the Disputed portion of any Disputed Claim. The Reorganized Debtors shall withhold any such payments, and, if the dispute is resolved in favor of the Claim Holder, the Reorganized Debtors shall make any missed distributions within fourteen (14) days after entry of a Final Order determining the Claim. If a Secured Claim is Disputed then upon escrowing the Disputed amount any Lien shall be transformed to the Escrowed proceeds and the affected Creditor shall be and is hereby required to discharge its Lien.

13.2 **DELIVERY OF DISTRIBUTIONS IN GENERAL**. Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Allowed Interests shall be made by the Reorganized Debtors, in order of preference, (a) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors after the date of any related Proof of Claim, (b) at the addresses set forth on the Proofs of Claim filed by such Holders of Claims, or (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Reorganized Debtors have not received a written notice of a change of address. Except as set forth herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or similar legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Reorganized Debtors shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

13.3 **ALLOCATION OF PAYMENTS**. Except as expressly provided in this Plan, all distributions shall be allocated first to principal until the principal amount of the Claim is paid in full, next to interest if interest is Allowed in relation to the Claim and finally, to fees, costs and expenses if such are Allowed.

13.4 **COMPLIANCE WITH TAX REQUIREMENTS AND ALLOCATIONS**. In connection with the Plan, to the extent applicable, the Reorganized Debtors shall be authorized to take all actions necessary or appropriate actions to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right, in its sole discretion, to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, other spousal awards, Liens, and encumbrances.

13.5 **UNDELIVERABLE DISTRIBUTIONS AND NON-NEGOTIATED CHECKS.** If any distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of such Claim shall be made unless and until the Reorganized Debtors are notified of the then-current address of such Holder of the Claim, after which time future distributions

shall be made to such Holder of the Claim without interest at such address.  If checks issued by the Reorganized Debtors on account of Claims are not negotiated within one hundred and twenty (120) days after the issuance of such check, the check shall be null and void.  Amounts in respect to undeliverable distributions and non-negotiated checks shall be held by the Reorganized Debtors until (i) such distributions are claimed or (ii) ninety (90) days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non-negotiated amounts shall revert to the Reorganized Debtors free of any restrictions thereon and the Claim of any Holder or successor to such Holder with respect to such distribution shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary.  Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

13.6   **FRACTIONAL PAYMENTS.**  Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars shall not be required. Payment of fractions of dollars that would otherwise be distributed under the Plan shall be rounded to the lower whole number of dollars.

13.7   **INTEREST AND PENALTIES ON CLAIMS.**   Unless otherwise specifically provided for in the Plan, the Confirmation Order or required by applicable bankruptcy law, post-petition interest and penalties shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date that such Claim is satisfied in accordance with the terms of this Plan.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

14.1   **RELEASE OF LIENS.**  The Debtors, the Reorganized Debtors and all parties-in-interest, including without limitation any Creditor, shall be required, and are hereby authorized, to execute any document reasonably requested by the other, or necessary, to memorialize and effectuate the terms and conditions of this Plan.  This shall include without limitation any execution by the Debtors or the Reorganized Debtors of UCC financing statements and the execution by Creditors of any UCC or mortgage discharges, releases or terminations.

14.2   **SETOFFS AND COUNTERCLAIMS.**   No Creditor (including without limitation a person or entity that becomes a Creditor as a result of a rejection of a contract) shall be allowed to setoff a Claim against an obligation to the Debtors or the Reorganized Debtors arising in connection with a different contract.  Unless expressly asserted in the Case through the filing of a Proof of Claim or otherwise expressly permitted under Article III, all setoffs and counterclaims are waived pursuant to Article VI of this Plan.  The terms of this paragraph shall not apply to any taxing authority.

14.3   **RECOUPMENT**.  In no event shall any Holder of a Claim or Interest be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of any Debtor or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date,

notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

14.4   **COMPROMISE OF LITIGATION.**   The Reorganized Debtors shall have the right to commence, continue, amend or compromise all Causes of Action (including without limitation any Avoidance Action and any action described in the Debtors' Disclosure Statement) available to any Debtor, any Estate, or the Reorganized Debtors, whether or not those Causes of Action were the subject of a suit as of the Confirmation Date.

14.5   **SUCCESSORS AND ASSIGNS.**   This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties-in-interest and their respective successors and assigns.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

15.1   **General Notices.**   Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, overnight delivery, first class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

–**to the Debtors:**

David Fisher, CEO
510 River Road
Shelton, CT  06484

–**with a copy to counsel for the Debtors:**

James Berman, Esq.
Craig I. Lifland, Esq.
Zeisler & Zeisler, P.C.
10 Middle Street
P.O. Box 1220
Bridgeport, CT 06604
Tel: 203-368-4234

15.2   **Exemption from Transfer Taxes.**   Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment.  The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment

and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

15.3    **Asserting and Curing Default under the Plan**.  Except as otherwise provided in the Plan, if the Reorganized Debtors default under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan, which documents may provide independent bases for relief concerning the assertion and cure of defaults), any Creditor, the LFIH Trust or party in interest desiring to assert a default will provide the relevant Reorganized Debtor, and its counsel, with written notice of the alleged default.  The Reorganized Debtor will have fifteen (15) days from receipt of written notice to cure the alleged default.  If the default is not cured after the giving any required notice or immediately upon default if no notice is required to be given, any Creditor, the LFIH Trust or party in interest may file with the Bankruptcy Court, and serve on the Reorganized Debtor, and its counsel, a motion to compel compliance with the applicable provision of the Plan.  The Bankruptcy Court, on finding a material default, may issue orders compelling compliance with the pertinent provisions of the Plan or granting such relief as is appropriate under the circumstances.

15.4    **Compliance with Tax Requirements.**    In connection with the Plan, the Reorganized Debtors will comply with any withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions will be subject to the withholding and reporting requirements.

15.5    **Revocation or Withdrawal of the Plan.**  The Debtors and the Committee each reserve the right to revoke and/or withdraw the Plan at any time before the Confirmation Date.  If the Debtors and/or the Committee revoke or withdraw this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors or any other Person.

15.6    **Modification of the Plan.**  The Debtors and Committee reserve the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (b) the Debtors shall have complied with Bankruptcy Code section 1125.  The Debtors further reserve the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (b) the Debtors shall have complied with Bankruptcy Code section 1125, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129.  A Holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

15.7   **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

15.8   **Due Authorization.**  Each and every Holder of an Allowed Claim or Interest that receives a Distribution under the Plan warrants that it is authorized to accept, in consideration of such Claim or Interest, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

15.9   **Implementation.**  The Debtors and the Reorganized Debtors may execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

15.10   **Execution of Documents.**  Upon application by the Debtors or the Reorganized Debtors, the Bankruptcy Court may issue an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument or document, and to perform any act, necessary for the consummation or implementation of the Plan.

15.11   **Bankruptcy Restrictions.**  From and after the Effective Date, the Reorganized Debtors shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code may specifically provide otherwise.  No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtor or the Debtors shall provide the U.S. Trustee such financial reports as may be required by law.

15.12   **Ratification.**  The Confirmation Order will ratify all transactions effected by the Debtors during the pendency of the Bankruptcy Cases.

15.13   **Integration Clause.**  This Plan and the Plan Supplement are the complete, whole, and integrated statement of the binding agreement among the Debtors, the Holders of Claims and Interests, and other parties in interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding the Plan, the Plan Supplement, or any of its provisions.

15.14   **Interpretation**.  Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings of the Articles, paragraphs, and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation.  Nothing herein shall be deemed as a judicial admission by the Debtors. Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

15.15   **Severability of Plan Provisions**.  If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, at the request of the Reorganized Debtor or the Debtors, will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be

invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

15.16  **Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), (a) the laws of the State of Connecticut shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation, formation, or organization of a Debtors shall govern corporate or other governance matters with respect to such Debtors, in either case without giving effect to the principles of conflicts of law thereto.

LATEX FOAM INTERNATIONAL, LLC

By:   / s / David Fisher
         David Fisher, CEO

PURE LATEXBLISS, LLC

By:   / s / David Fisher
         David Fisher, CEO

LATEX FOAM INTERNATIONAL
HOLDINGS, INC.

By:   / s / David Fisher
         David Fisher, CEO

PLB HOLDINGS, LLC


By:___/ s / David Fisher_____
      David Fisher, CEO


LATEX FOAM ASSETS ACQUISITION, LLC


By:___/ s / David Fisher_____
      David Fisher, CEO


Dated:  December 3, 2014